PIERCE, The HELEN M.  See Case No. 6,332.

## Case No. 11,152.

### PIERPONT v. FOWLE.

[2 Woodb. & M. 23.] [1]

Circuit Court, D. Massachusetts. Oct., 1846.

EQUITY — DEMURRER TO PART OF BILL FOLLOWED BY ANSWER—COPYRIGHT—BILL FOR DISCLOSURE AND ACCOUNT OF SALES—JURISDICTION—REMEDY AT LAW — INJUNCTION — TITLE — AUTHOR'S RIGHT TO SECOND TERM.

1. A demurrer in part to a bill, followed by an answer as to the rest, is not thus overruled or

---

[1] [Reported by John Lathrop, Esq., and here reprinted by permission.]
[2] [Affirmed in Case No. 11,150.]

---

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

withdrawn by the rules of the court here, though it might be in England. And the rules of the court in that respect do not violate any law as to private rights, but merely change the practice of the court.

2. The acts of congress as to copyrights, do not give any relief in this court, which could not before be had, either in law or equity, in the state or United States court.

[Cited in Palmer v. De Witt, 47 N. Y. 536.]

3. A bill in chancery, asking a disclosure, and an account of sales, under the disposal of a copyright alleged to belong to the complainant, and praying an injunction against further sales, gives, on its face, jurisdiction appropriate to chancery, and about which a remedy at law would not be so complete as accounting here and an injunction. Chancery cannot grant relief on the ground, that a right exists, which the party has failed to redress at law; but proper matters for the exercise of its jurisdiction, must be set out and sustained.

[Cited in Jewett v. Cunard, Case No. 7,310; Sawyer v. Gill, Id. 12,399; Almy v. Wilbur, Id. 256.]

[Cited in Wallace v. Harris, 32 Mich. 392.]

4. If no benefit or advantage whatever appears to be gained by proceedings in equity, rather than at law, the bill will be dismissed without prejudice, in order that the rights of the parties may be adjusted at law.

[Cited in Teft v. Stewart, 31 Mich. 372.]

5. An injunction in chancery, as a preventive remedy merely, in case of an alleged encroachment on a copyright, is a more ample and appropriate remedy than any suit at law; and hence, when it is asked, and an account and disclosure of facts desired, they will be required, in order to settle the question in controversy.

6. In England where the power in chancery is concurrent with that at law over the matter, the former may, in its discretion, proceed to act in it; but in this court it is otherwise, under the judiciary act of 1789 [1 Stat. 73], if the remedy be as full and perfect at law as in chancery; and the objection may sometimes be taken here under the answer, and at the hearing, as well as by demurrer.

[Cited in Orr v. Merrill, Case No. 10,591; Foster v. Swasey, Id. 4,984; Allen v. Blunt, Id. 215; Berry v. Ginaca, 5 Fed. 481; Consolidated Roller-Mill Co. v. Coombs, 39 Fed. 38.]

7. In this case the title to the copyright under a contract of sale was also in dispute, and it was *held*, that this question might be settled under this bill, and the case proceed in chancery, rather than send the parties to the law side of this court to settle the title.

8. The reason for a different rule often in England, that the judges to settle the question at law are different, does not apply to this court; and this court might not proceed to settle it, if all the facts in a written contract were not already before it, and the law on them the same on the equity as on the law side of this court.

9. When A employs B to compile a school book, and gives him some suggestions as to its character and form, and agrees to pay him $500, and B conveys to A the copyright, and it is published by A, calling B the author on the title-page, it was held, that only the usual copyright for fourteen years passes under the contract; the author being alive at the end thereof, has the sole interest in the additional term then allowed to authors in such cases.

[Cited in Clum v. Brewer, Case No. 2,909; Lawrence v. Dana, Id. 8,136.]

10. A usage among booksellers to consider the second term as passing with the first, does not control the rights of B, who was not a bookseller, nor shown to be conversant of such usage.

[Cited in Taylor v. Carpenter, Case No. 13,784; Marye v. Strouse, 5 Fed. 488.]

11. The construction of all such contracts and laws, in respect to copyrights, should be favorable to authors, as the laws were intended for their benefit; and when they assign their rights to others, no more must be considered as passing than was contemplated at the time by the parties, and paid for, and clearly indicated in the contract.

[12. Cited in Brooks v. Norcross, Case No. 1,957, to the point that the allowance of a jury to settle at law the question of infringement arising in a suit in equity is not a right, but is a matter in the sound discretion of the court.]

This was a bill in equity [by John Pierpont against William B. Fowle], asking for certain disclosures to interrogatories concerning the title, and printing, and sale of the American First Class Book, and the National Reader. It averred, that the copyright in both belonged to the complainant, of the first one for fourteen years from the 22d of June, A. D. 1837; and of the last one, for fourteen years from the 11th of June, 1841. Besides the disclosures asked, the bill requested, that the respondent be enjoined from publishing or selling copies of either of those books during the terms before mentioned, and that he be made to account for all the money, notes, and promises he may have received from one Bowen, for leave to print or sell said books during any part of those terms. The answer of Fowle denied the exclusive copyright in those books to be in the complainant, and questioned his liability to answer most of all the interrogatories put, as he is not charged in the bill with having himself unlawfully printed or sold copies of those books, but only with claiming some interest in them. He then proceeded to set out the different contracts between himself and the complainant, as to the books or copyrights, and denied that the plaintiff was entitled to the copyright in them as claimed, but, on the contrary, insisted it had been assigned to himself. He next averred, as to the contracts between himself and Bowen, that the plaintiff had no right to inquire into or receive any account of the profits and payments thereon. The complainant filed several exceptions to this answer, four of which related to the refusal to disclose the transactions between Fowle and Bowen, in respect to these books, and to furnish an account of the receipts; and another related to its being in part a demurrer to the bill, and in part an answer. The contracts referred to in the bill and answer, as well as other parts of the latter, will be given, so far as material, in the opinion of the court.

Sewall & Fletcher, for complainant.
B. R. Curtis, for respondent.

WOODBURY, Circuit Justice. The informalities in this answer, as a demurrer in

part and a reply in part, would probably be open to the exceptions taken, and be bad under the English system of pleading in chancery. Thus, if an answer is put in after a demurrer, the answer prevails and over-rules the demurrer. 1 Mont. Eq. Pl. 99; 2 Dickens, 712; 6 Paige, Ch. 333; 3 Mylne & C. 653. So it overrules a plea; and both of these doctrines rest on the principle, that the demurrer and plea, giving reasons why the respondent need not answer, are with-drawn virtually or waived, by afterwards proceeding to make an answer. Story, Eq. Pl. § 688. If they are relied on, the respond-ent should stop with them alone. Id. §§ 606, 846. But the rules of the supreme court of the United States have rendered less strict-ness in this matter sufficient, and allow a plea to part and a demurrer to part, and seem intended to remedy any objection in such case for duplicity or uncertainty. See rules 32, 37, 39. The power to make such a rule is questioned by the complainant, and there might be some ground for exception to it, if the rule violated any provision of the constitution or any act of congress. See proviso in judiciary act (section 17). So too, perhaps, if violating any principle of estab-lished law in equity as to private rights. But when, as here, the rule merely regulates a matter of practice, it seems to be clearly within the power of the supreme court, un-der the 11th section of the judiciary act of 1789. And as to the expediency of the rule, if within the power of that court, there is no use nor propriety in my offering an opin-ion, it being the duty of this tribunal to en-force it, whether expedient or inexpedient. So, if it was a mere personal objection, sought to be reached in the answer, the rule might not be justified. Wood v. Mann [Case No. 17,951]; Livingston v. Story, 11 Pet. [36 U. S.] 393.

The other exceptions taken to the answer, on the ground that the respondent declines to make disclosures of the amount of money received of Bowen for a sale to him of the copyrights in these books for some period, or to some extent, and which the complainant alleges to belong exclusively to himself, are of a different character. They go to the merits of the controversy. Because if the complainant is thus the owner of those copy-rights, and has a power to make others, in a court of equity, desist from the sale or use of them, it would seem to follow, that he might make others disclose the sums received for such use and sales, and account for the same, as a part of the equitable re-lief connected with such a power.

I do not proceed in this view, on the ground claimed by the plaintiff, to redress the owners of copyrights or patents in this court under the acts of 1790 or 1829, in any cases where they could not before have had relief in some court, either of equity or law. Those acts merely enabled them to prosecute such claims in this court as they

legally had done before, without going to the state tribunals; because the claimants held all their rights under acts of congress, and the public interest required a uniform construction to be placed by one tribunal on all important questions connected with rights so held. Does the complainant then bring himself by his case within the ordi-nary jurisdiction of this court on its equity side? One of the branches of equity juris-diction is to issue injunctions, another to compel disclosures, and another still to re-quire an account in proper cases. All of these claims to sustain jurisdiction on the equity side of this court, are interposed here, and are doubtless sufficient to justify the court in proceeding to settle the rights of these parties, without turning them over to a court of law, unless we are prevented by two objections. 1 Story, Eq. Jur. § 67. It is not that this court, on its equity side can, as seems to be supposed at the bar, give relief in all cases, where a party is unable to obtain it at law. So far from being in-vested with powers to remedy every wrong and sustain every right, not relievable at law, this court on its equity side is as much re-stricted as on its law side. In neither, can it go beyond the settled principles belong-ing to each, and those principles have their limits and rules, in chancery as well as at law. Howe v. Sheppard [Case No. 6,773]. But here the bill, as before seen, does in fact, contain allegations, bringing the case within those settled principles and rules. And the question, whether this court in equity has jurisdiction or not in the first instance, over the matter prayed for, must be adjudged for the plaintiff. The numer-ous cases, where bills in equity have been dismissed, and further proceedings stopped, because no sufficient reasons for jurisdic-tion in equity are alleged, are, therefore, no precedents here, though such cases may be good law in a state of facts where they ap-ply.

What then are the two objections which require more detailed consideration? One is, that this court in equity will not proceed with a bill, although enough is alleged to give jurisdiction, provided it appears that a full and ample remedy can be sustained at law; and that such an one exists here. And the other is, that the title of each to the copy-rights is in dispute between these parties, and it has been argued, that this circum-stance is a sufficient ground to prevent us from going further till that controversy is settled at law. The principle involved in the first point is, that a party has a right to a trial by a jury, and by common law prin-ciples, and by more than one judge usually, in matters or controversies, not in their char-acter exclusively maritime, or peculiarly of equity cognizance. Hence cases should not, if the respondent objects seasonably, pro-ceed in equity or admiralty, (where no jury trial can be claimed as a right,) unless clear-

ly and exclusively belonging to them. Equity power is also limited here and placed in courts of limited jurisdiction; whereas in England it is more general, and depends on usage, and is not restricted by positive statute. Baker v. Biddle [Case No. 764]. When we advert to the cases, supposed to control this point, they will be found full of discriminations and diversities as to the facts, which, if duly attended to, will show how far they ought to govern here, but which, if overlooked, are likely to mislead. I think they will show, that this case being at first begun here properly as of equity jurisdiction, can be finished under it, without violating any principles of chancery, or any act of congress. The 16th section of the judiciary act is the one chiefly relied on. "And be it further enacted, that suits in equity shall not be sustained in either of the courts of the United States, in any case, where plain, adequate, and complete remedy may be had at law." 1 Stat. 82. It is true, also, that a court of chancery in England will not relieve, generally, where the plaintiff has the same relief at law. Com. Dig. "Chancery," 3, F, 9; 1 Vern. 71; Bunb. 18; 1 Ves. Jr. 161, 341; 2 Ves. Jr. 38; 1 Hayw. 233, 370; 2 Hayw. 136; 1 Johns. Ch. 463; 4 Johns. Ch. 352; 5 Johns. Ch. 232; 1 Hen. & M. 100; 4 Hen. & M. 470, 471. Nor if the damages at law are ample for the injury. Hansbury v. Baker, 1 Pet. [26 U. S.] 236; [Boyce v. Grundy] 3 Pet. [28 U. S.] 215; M'Ray v. Carrington [Case No. 8,841]; Baker v. Biddle [supra]; [Hepburn v. Dunlop] 1 Wheat. [14 U. S.] 197; Russel v. Clark, 7 Cranch [11 U. S.] 69; Bean v. Smith [Case No. 1,174]; [Dade v. Irwin] 2 How. [43 U. S.] 383. So when a bill was on a policy, giving jurisdiction by asking a reform of the contract, and it is refused, the court will dismiss the bill, though there is a right to recover on the policy, because it is ample at law. Graves v. Boston Marine Ins. Co., 2 Cranch [6 U. S.] 419. So if a discovery has been refused, and a party dies, the court will not revive the case. 10 Ves. 31; 1 Mad. 217; [Russel v. Clark] 7 Cranch [11 U. S.] 69. But in many other cases well commenced in equity, the court will proceed to finish it there on matters concurrent at law. See [Hepburn v. Dunlop] 1 Wheat. [14 U. S.] 179; Bunb. 29; U. S. v. Myers [Case No. 15,844]. Or if the remedy existing at law is doubtful. 2 Caines, Cas. 1; 10 Johns. 587; 1 Paige. Ch. 90; 2 Stew. 420. But the remedy at law is now deemed sufficient, if it be appropriate and effectual. 1 Spence, Eq. Jur. 699. Especially since new trials are so extended by petition as well as motion, and correct much before remediable only in chancery (Id. 670), and since courts of law have adopted so many of the principles of equity. Usually, too, chancery will not go on, if the remedy at law be clear, and the case is stale, and the title is questioned. Dade v. Irwin's Ex'r, 2 How. [43 U. S.] 383. And not unless the subject-matter is still one of chancery jurisdiction, and a disclosure is obtained. Pratt v. Northam [Case No. 11,376]; [Russell v. Clark] 7 Cranch [11 U. S.] 89. This may not be the course of practice in England and in the States, as in New York, where no limitation has been affixed, as by the judiciary act here, to redress in chancery. But where the case at law is concurrent throughout in the courts of the United States, and relief is as complete in law as in equity, unless necessarily begun in equity, and a disclosure is obtained there, equity will not proceed. Such is the doctrine in Smith v. McIver, 9 Wheat. [22 U. S.] 532, besides several of the other cases before cited. Yet, when proceedings are commenced in equity, for a peculiar reason, as for a discovery of assets, you may often complete them there, and therefore may complete probate cases there. 2 Atk. 360-363; 3 Atk. 262, 263; 4 Johns. Ch. 619; U. S. v. Aborn [Case No. 14,418]; Bean v. Smith [supra]; 4 Cow. 718; Hardy v. Cramar, 17 Johns. 288. Hence it follows, that a case will not always be allowed to go on in chancery, merely because the power there is concurrent with that at law. But it must be fuller, more appropriate, or better. Harrison v. Rowan [Case No. 6,143]; Baker v. Biddle [Id. 764]; Boyce's Ex'r v. Grundy, 3 Pet. [28 U. S.] 215; [Wilson v. Mason] 1 Cranch [5 U. S.] 98; 1 Schoales & L. 205; 17 Johns. 384. This is the case often in respect to an injunction, which may prevent litigation, or a multiplicity of suits, and give preventive redress in some cases, when remedies at law can do neither. So in U. S. v. Myers [Case No. 15,844], it is held, if a perfect remedy at law exists, a party should not go to equity, but if a trust exists besides, it may be prosecuted in equity. As a farther illustration of this principle, it is in many chancery bills specially averred, that no relief exists at law. See Heriot v. Davis [Id. 6,404]. It has been said also, that the court of chancery grants relief only where courts of law do not. 1 Spence, Eq. Jur. 408, note; 4 Inst. 84, 443, 625, 693; 1 Edw. Ch. 218. This was one class where relief was given in chancery, but is not now, probably, the only one. But in Pratt v. Northam [supra], the judge seems to hold, that the court may execute concurrent powers with courts of law, when the relief is identical. I apprehend this last is not the correct view here under the judiciary act, any more than in England, unless there be some substantial reason and advantage in going to chancery, or in going on, after at first having properly begun there. A party must not go to chancery to settle a question of law alone. 2 Johns. Ch. 371.

Some cases, cited to show, that the United States courts here will proceed to sustain suits in equity, when the relief is entirely ample at law. rest on a different principle when analyzed. Thus in U. S. v. Howland, 4 Wheat. [17 U. S.] 115, a trust was relied on to retain the case in equity; and Harrison v.

Rowan [Case No. 6,143], goes on the ground, that relief at law was not in them so adequate and complete as in chancery; and [Vattier v. Hinde] 7 Pet. [32 U. S.] 274, relates only to a rule of practice. In the following cases, fraud likewise existed, and was not only to be relieved against, but in a manner peculiar to chancery, by rescinding the contract: [Gregg v. Sayre] 8 Pet. [33 U. S.] 244; Smith v. McIver, 9 Wheat. [22 U. S.] 532; 5 Munf. 183, 219; [Boyce v. Grundy] 3 Pet. [28 U. S.] 219. In others the matter was a trust, or the remedy peculiar, as by an injunction. 2 Story, Eq. Jur. § 1256; Id. §§ 74, 91; Briggs v. French [Case No. 1,870]; Gass v. Stinson [Id. 5,260]; [U. S. v. Howland] 4 Wheat. [17 U. S.] 115. In Pratt v. Northam [supra], it was held, that though a remedy existed at law, it was not so ample as in equity. So Bean v. Smith [Case No. 1,174]; [Herbert v. Wren] 7 Cranch [11 U. S.] 370–376. And if it was as ample, yet being a mere local remedy at law in that state, and not a general one, it did not bar jurisdiction in equity. [Boyce v. Grundy] 3 Wheat. [16 U. S.] 212; [U. S. v. Howland] 4 Wheat. [17 U. S.] 115. So the remedy in equity is sometimes concurrent with one at law, as in cases of fraud, dower, and accident, and then it is said it may be followed in equity, though no better than at law, (page 105); Smith v. McIver, 9 Wheat. [22 U. S.] 532; Cooper, Eq. Pl. 28. But in some respects it should be better.

Chancery does not decide contrary to law, but goes beyond it sometimes. 1 Spence, Eq. Jur. 418; Amb. 810, Append. It gives relief in some cases, where courts of law do generally, but, from forms or otherwise, cannot do it so well, if at all; as relief to one corporator, co-partner, or executor, against another. 1 Spence, Eq. Jur. 432. So sometimes in frauds. Id. 625; 2 Ves. Sr. 155; 1 Burrows, 396. Asking a discovery, separately or with other matter, was thus often enough to give jurisdiction in chancery. 1 Spence, Eq. Jur. 694. But quaere, unless the other matter was of a chancery character. In Herbert v. Wren, 7 Cranch [11 U. S.] 370, allegations were made not only for dower, but partition, discovery, and account, which belong more appropriately to equity. Harrison v. Rowan [supra]. In U. S. v. Howland, 4 Wheat. [17 U. S.] 108, the government was one party, and hence could prosecute in its own circuit courts, though it might in local courts have relief at law. Yet, as before suggested, I doubt some the correctness of this idea in common cases, that a remedy may be pursued here in equity whenever concurrent. Relief should first be sought in equity, or some ground alleged for its remaining there, as being superior to the remedy at law, or that it began there for relief not existing at law, e. g., for a discovery. Bean v. Smith [Case No. 1,174]. Whether the rule is here different or not from what it is in England, in such cases, does not then seem to be fully settled. Some cases appear to regard the power in chancery here, if full relief can be had at law, as more limited than in England, and not enabling the court to go on, because possessing merely concurrent powers. While others regard it as the same, and this clause in the judiciary act as merely declaratory. Gordon v. Hobart [Id. 5,609]. But it is difficult to see a reason for passing the law here if merely declaratory, unless the rule or usage in England was unsettled, and in some cases chancery courts exercised a concurrent power with a court of law in a particular instance, and gave merely a similar relief; while in other instances, it declined to proceed, (though having jurisdiction over the matter and case set out,) if it could do nothing in aid of perfect justice between the parties, which could not be accomplished in a court of law. My own impression is, that from a strong fondness for a trial by jury, the common law and all its principles and forms, rather than those in equity, it was the design of our fathers, in that clause of the judiciary act, not to permit proceedings to go on in chancery if it turned out in the progress of the inquiry, that full and adequate relief could be had at law, and therefore no necessity existed to go into chancery, or, after being in, to proceed further there. And a bill in such case is dismissed, not because equitable grounds of jurisdiction are not set out, as that would belong to another class of objections to the jurisdiction, but because under our system, though a court of chancery could give relief in the particular case, and in England would possess jurisdiction to proceed and finish the case if it pleased; yet as a court of common law appears to be able to render as full and efficient redress as a court of chancery, the jealousy as to the latter requires it, under the 16th section of the judiciary act, not to proceed farther. In the present case, however, powers are asked to be exercised, and redress given, of a kind which do not exist at law. A court of law cannot give as ample redress for a past violation of a copyright, or one anticipated in future, as courts of equity. The latter can not only compel disclosures as to the number and an account of sales, which it is more difficult to prove at common law, but require an account between principal and agent or quasi agent, or between quasi partners, that cannot be so effectually opened to light by other modes of evidence. So, too, the prevention of a multiplicity of suits by an injunction, a great and good object of chancery powers as well as preventive redress, being much better than retrospective, and much fuller and more accurate than at law, are both attained by such proceedings as these in chancery. Attorney General v. Burridge, 10 Price, 374; Gaines v. Chew, 2 How. [43 U. S.] 619.

We are, therefore, forced to the conclusion, that this court had in this case jurisdiction to begin and to proceed, notwithstanding a remedy existed at law, which is less appropriate and less efficient or ample. This objec-

tion, then, is overruled on the merits, and not for another reason urged by the complainant, that it was taken too late.

In respect to the proper time and mode of taking an objection of this kind, (that the complainant has an ample relief at law,) it is laid down, that it must in England be by a demurrer. Bunb. 29. The respondent cannot object, it is said, after the case is set down for a hearing. 2 Hayw. 127; Grandin v. Le Roy, 2 Paige, 509. Nor after an answer or joinder of issue. 2 Johns. Ch. 339. But the correct rule probably is, that a respondent may and usually should demur, if it appears on the face of the bill, that nothing is sought which might not be had at law. Baker v. Biddle [Case No. 764]; 22 Pick. 237; 23 Pick. 148. If, however, a disclosure is asked, it would be premature to take the objection till an answer is put in. Id.

I shall now proceed to examine the other objection to proceeding farther in chancery, that the title to the copyright is in dispute between these parties, and should be settled first at law. Let us advert a moment to the powers upon this, that do clearly exist here, and the structure of this court, before disposing of the question finally. A court of equity can restrain a future violation of a copyright, as well as require an account for a past one, and this remedy is often better than damages, which alone can be had at law. 2 Story, Eq. Jur. §§ 210, 223, 933; 10 Ves. 132; Jeremy, Eq. Jur. 327; 6 Madd. 10; Mitf. Eq. Pl. 138; 1 Russ. & M. 73, 159; Jac. 341, 471. See other cases cited in these. And the conscience of the defendant, by a disclosure asked, can be probed as to every thing material to the sale or use.

Now it is conceded, that the exercise of extraordinary powers in forwarding such ends in favor of a party, must of course depend on his right being acknowledged or decided first. But though not acknowledged here, as is often the case when an injunction or account is prayed for, why should the parties be sent to law first to try it there? Are not all the necessary facts now before this court? Is not the question to be settled by the same judge and on the same principles as at law? And hence, is not the reason much stronger for settling it here than in England, where the judges in the courts of law are different persons? And this last is the reason assigned at times for allowing the law courts to settle the titles, in order to have the decisions uniform. Bramwell v. Halcomb, 3 Mylne & C. 739. It is conceded, that in England, when there is an application to chancery to order a writing to be given up, and the title to it is still in controversy, or where an injunction is asked quia timet, and the title to the land, or a patent is still disputed, chancery will generally require the unsettled rights of the parties to be first adjudged at law. Because the judges at law are different, the rules on some points unlike, and the use of a jury exists in one tribunal and not in

the other. [Grivin v. Breedlove] 2 How. [43 U. S.] 38. Chancery may form an issue to be tried at law to settle the title and continue the bill (4 Dru. & War. 80), or it may dismiss the case till the parties settle their rights at law (Jervis v. White, 7 Ves. 415; 2 Ves. 486, 487, note; 1 Johns. Ch. 517). It is a matter in its discretion. 2 Ves. 483; 5 Johns. Ch. 118; [Miller v. McIntyre] 6 Pet. [31 U. S.] 65. But the parties will usually be sent to law to try the question. 3 Daniell, Ch. Pr. 1863; 1 Jac. 311; 2 Johns. Ch. 281, 371; 2 Story, Eq. Jur. §§ 852, 853; [Alexander v. Pendleton] 8 Cranch [12 U. S.] 462. So in cases of nuisance, if the title and right as to the subject-matter is disputed bonâ fide, the court will not enjoin till the title is settled at law. Spooner v. McConnell [Case No. 13,245]; Mohawk Bridge Case, 6 Paige, 563; 7 Johns. Ch. 315; Case of Parker in rem, 12 Pet. [37 U. S.] 98. Nor enjoin even temporarily against the use of a patent, unless there has been a recovery on it, or long possession. Case of Orr v. Littlefield [Case No. 10,590]. But it will try the right before a permanent injunction, either in chancery or at law, as most convenient, making up at times a proper issue, if in chancery, for the jury, in order to settle any disputed facts. But it is a question of discretion with the court, whether to interfere or not by injunction before the legal right is established. Saunders v. Smith, 3 Mylne & C. 735.

Equity is to aid law usually by an injunction, and here parties usually settle the law first, whether a right exists or not. There is, however, no general rule, but the circumstances of each case govern the discretion. And in respect to principle concerning the powers, which are usually exercised by chancery in settling disputed titles or rights, I can see no objection to its being done in that court, when it is a necessary or appropriate incident to settling the merits in an equity matter, over which it has peculiar jurisdiction, or can give a peculiar and more effective remedy than at law. Thus we have before stated, that a party will not be allowed to go into chancery to settle a disputed law point alone (2 Johns. Ch. 371); though if he wants a discovery also, or relief on other matters belonging peculiarly to that court, the law point may be there settled. 3 Atk. 336; Cathcart v. Robinson, 5 Pet. [30 U. S.] 278. So, when instruments are asked to be surrendered, as clouding a title, or void for forgery, or other illegality, the power to impound or return them to the proper party will be exercised. It is the duty as well as practice of late for chancery to decide most questions of law for itself. 1 Spence, Eq. Jur. 517; Blundell v. Gladstone, 11 Sim. 489; Muddle v. Fry, 6 Madd. & Gel. 270; 7 Ves. 17; Nelson, 17. So the courts of law now enforce many principles, once maintained only in chancery. 1 Spence, Eq. Jur. 683, 638. But this furnishes no reason why chancery should abandon the jurisdiction over them. Hawk-

shaw v. Parkins, 2 Swanst. 545; 1 Spence, Eq. Jur. 638, 639. Such are the cases of relief to sureties, and holding purchasers of trust property by trustees voidable, half of what is called common law. Another distinction is, that a court of chancery will decide a question of law, which arises in exercising its undoubted jurisdiction, though it is usual, in questions as to real estate, to send the case to a court of law if desired, on such a point, to get its opinion for chancery. 8 Ves. 272; Cholmondeley v. Clinton, 4 Bligh, 109; 1 Spence, Eq. Jur. 489. The rules of construction being the same in both courts, and chancery asks advice of common law judges only in grave doubts, or sends a case to law, retaining the bill in the mean time. Houston v. Hughes, 6 Barn. & C. 420; 4 Dru. & War. 80. Precedents are to govern conscience in chancery as well as at law. It is not conscience naturalis et interna, but civilis and politica. It is not making the law, but declaring what it has been established to be. 1 Spence, Eq. Jur. 417; 1 Vern. 77. It is not making new principles, but applying old ones to new facts or cases. 1 Spence, Eq. Jur. 417, note; and Gee v. Pritchard, 2 Swanst. 414; 3 Bl. Comm. 434. Indeed it seems to be conceded, that chancery will not send parties to a court of law, if facts enough are before chancery, to decide the law, and no reasonable doubt exists with the court as to the title on those facts. 10 Price, 374, 412. So in respect to copyrights, the course has been so liberal as to enjoin, if an equitable or a clear title exists. Mawman v. Tegg, 2 Russ. 385; Eden, Inj. 286; 3 Swanst. 679; Jeremy, Eq. Jur. 326. And if the title be free from doubt, the court will always enjoin. Amb. 694; 2 Swanst. 428, note. Here the circumstances are peculiar, and take the case out of some general rules. There is no doubt as to originality or piracy, copyright good or not, plaintiff one owner or not, but a naked question of a transfer of title or not by a written contract, which is made a part of the case. Now as that written contract is to be construed in a court of equity as in a court of law, and in this tribunal is to be construed by the same judges, whether at equity or law, and no fact is pretended to exist, which either party wants to be submitted to a jury in a trial at law, I can hardly see any utility or necessity of turning the case over to the law side, and the more especially when by asking for a discovery, as well as injunction and account, matters are asked for, which give to this court clear jurisdiction in equity, and which, so far as regards an injunction, furnish a remedy more full and efficient than any one at law. Briggs v. French [Case No. 1,870].

There are other cases, where for cogent reasons chancery will settle disputed titles. In cases of bills of peace and quia timet, the party may be in possession, and not able to sue at law, yet still there may be an outstanding deed or claim, a mischievous and injurious claim; and if illegal for fraud, or any other cause, the other party may possess a right to have it surrendered or enjoined. Briggs v. French [supra]; [Peirsoll v. Elliott] 6 Pet. [31 U. S.] 95; [Massie v. Watts] 6 Cranch [10 U. S.] 148; Drew. Inj. 218, 219. And then courts of chancery will frequently decide such disputed questions for themselves. 5 Jur. (London) 58; Drew. Inj. 211; Binns v. Woodruff [Case No. 1,424]; Story, Eq. Pl. § 847, note. So, where there is other matter proper for equity, the title can be settled as an incident to that. In U. S. v. Howland, 4 Wheat. [17 U. S.] 115, a trust was alleged, and the court held, that it could there decide a disputed title to the property, though this might be tried at law in their discretion. Here the injunction and accounting are both proper, if the title is in the plaintiff. So where, in chancery, fraud was averred in a bond to give jurisdiction to order it to be given up. Jackman v. Mitchell, 13 Ves. 587. It may then be ordered to be given up, though invalid at law as well as in equity. There is a concurrent power to settle the dispute as to title in chancery in such case, if not void on its face, but is in truth void. Colman v. Sarrel, 1 Ves. Jr. 50; 4 Ves. 129; 5 Ves. 235.

Under the existing circumstances, then, a controversy like this as to the title to the copyright, may be as well settled by this court on its chancery as on its law side, the jurisdiction being clear on both sides, both courts being to both parties, and the merits of the title in the particular in controversy—identical. It seems absurd, when all the facts are agreed, for the same court to postpone a bill on its equity side till a trial of a title can be had on the law side, and which here is to be settled by the same judges and on the same principles. These two prominent objections, then, being surmounted, does the complainant show a title, on the contracts and facts before us, to these copyrights, or does the respondent do it? On this, there is a decided balance of facts and law in favor of the complainant. It is conceded, that the complainant was the author of both the books, however the respondent may have employed him, and furnished valuable suggestions as to the plan and the materials. Of one, he admits, on the title-page, that the complainant was the author. It is of little consequence how it would have been without this. In respect to the other book, the defendant made not even suggestions nor supplied means; and the author and publisher were the same person, and being the plaintiff, he alone took out the copyright. Of neither did Pierpont make any assignment, except during the first term of fourteen years, and of both he, as author, was entitled, being alive when the first term expired, to fourteen years more. See Acts May 31, 1790 [1 Stat. 124], and February 3, 1831 [4 Stat. 436]. The words in the first act were: "And if, at the expiration of the said term, the author or authors, or any of them, be living, and a citizen or citizens of these United States, or resident

therein, the same exclusive right shall be continued to him, or them, his or their executors, administrators, or assigns. for the further term of fourteen years: provided, he or they shall cause the title thereof to be a second time recorded, and published in the same manner as is hereinafter directed, and that within six months before the expiration of the first term of fourteen years aforesaid." 1 Stat. 124, § 1. The words of the second act, as applicable, were: "And be it further enacted, that, whenever a copyright has been heretofore obtained by an author or authors, inventor, designer, or engraver, of any book, map, chart, print, cut, or engraving, or by a proprietor of the same, if such author or authors, or either of them, such inventor, designer, or engraver, be living at the passage of this act, then such author or authors, or the survivor of them, such inventor, engraver, or designer, shall continue to have the same exclusive right to his book, chart, map, print, cut, or engraving, with the benefit of each and all the provisions of this act, for the security thereof, for such additional period of time as will, together with the time which shall have elapsed from the first entry of such copyright, make up the term of twenty-eight years, with the same right to his widow, child, or children, to renew the copyright. at the expiration thereof, as is above provided in relation to copyrights originally secured under this act." 4 Stat. 439, § 16. Both refer to authors alone, and not their assigns, as entitled. They do not even embrace in terms, express assignees of a second term, made before the second term begins, and the last act does not name assigns at all. So the extension allowed under the act of 1831, of a copyright taken out under that act, looks entirely to the author and his family, and not to assignees. "And be it further enacted, that if, at the expiration of the aforesaid term of years, such author, inventor, designer, engraver, or any of them, where the work had been originally composed and made by more than one person, be still living, and a citizen or citizens of the United States, or resident therein, or being dead, shall have left a widow, or child, or children, either or all then living, the same exclusive right shall be continued to such author, designer, or engraver. or, if dead, then to such widow and child, or children, for the further term of fourteen years: provided, that the title of the work so secured shall be a second time recorded, and all such other regulations as are herein required in regard to original copyrights, be complied with in respect to such renewed copyright, and within six months before the expiration of the first term." Id. § 2.

In respect to both copyrights also, the complainant conveyed, eo nomine, not a term of twenty-eight years; nor one, as long as he should be entitled; nor all his interest of every kind in the book or its manuscript; but simply as to the first. "the copyright of said book," and as to the last, the copyright of it "shall be considered the joint and equal property of said P. and F." The only copyright then existing or taken out for either was for fourteen years only. One contract was dated July 21st, 1823, and one July 12th, 1827. That copyright, which had been then taken out, was the subject-matter of the contracts; no words are used looking beyond that; no consideration was paid or talked of beyond that. There was no mutuality beyond that. For the payment of the last was made in another copyright, in another book, where the author might not secure the first term, or, if he did. might not be willing to renew the copyright. The renewal of the copyright in either of these, was then uncertain, and not, to appearance, contemplated by either side. When the assignment was made, it doubtless referred to what was in existence, and not to any future contingency, nor to what was personal for the author, if spared to old age, nor for what any compensation was specially either asked or made.

It is said, that a usage existed among booksellers, to regard the renewed term as passing with the first one, as a matter of course under the mere assignment of the copyright. But if such a usage could apply at all, it would be only among those acquainted with the usage, or belonging to the fraternity of booksellers. 9 Pick. 198; 15 Mass. 431; 21 Pick. 483; 1 Taunt. 347; 14 Mass. 303; Brown v. Brown, 8 Metc. 573, 576. See 1 Greenl. Ev. §§ 336–338, and cases. An usage is not admissible, unless so notorious that it is known to both parties. U. S. v. Duval [Case No. 15,015], and Davis v. A New Brig [Id. 3,643]. And a party is not allowed to explain a writing by an usage, unless certain words in it have two senses. The Reeside [Case No. 11,657.]

In the next place, it is the author and not the assignee, to whom the extension of the right is eo nomine given, by the statute of Anne, as well as the acts of congress. Jeremy, Eq. Jur. p. 318. By that, "the sole right shall return to the author for fourteen years more, if then living." So by 54 Geo. III.. after the enlarged term of twenty-eight years is conferred on an author or his assigns, it is he alone on whom fourteen years more is conferred, if he be then living. Id. So here the copyright is in the act of 1790 and 1831, given to the author alone, and to others, only, who purchase it from him. By construction, then, we should not extend it beyond the words and design of the statute, made to benefit authors, unless it seems to be actually meant by the author to be transferred forever, and including any future contingency, and a clear and adequate consideration paid for the extended term. See Wilson v. Rousseau, 4 How. [45 U. S.] 677, opinion of minority; and Washburn v. Gould [Case No. 17,214]; Woodworth v. Sherman [Id. 18,019]. It was the genius which conceived and the toil which compiled the book that is to be rewarded by even the first copyright, and no one ever dreamed that an as-

signee could alone take out the second or extended term, unless he has paid for it, clearly contracted for it, and in equity, rather than by any technical law, is to be protected in it. Here the assignee has neither, manifestly and distinctly, in his favor; nor has he filed any caveat to prevent a renewal by the author alone (Maugh. Lit. Prop. 70); nor used other references to the renewal in his contracts (Id. 73; Carnan v. Bowles, 2 Brown, Ch. 80). In Rundell v. Murray, 1 Jac. 316, the court seems to admit that a general assignment in writing of a copyright, will make it endure for only fourteen years. All the cases which seem to militate with this, are where the contract of sale or assignment uses language, looking beyond the existing copyright, such as referring to all the interest in the matter. 1 Hawk. P. C. (6th Dub. Ed.) 477; 2 Brown, Ch. 80. Or to the manuscript or book itself, as to which there may be a right at common law. Wheaton v. Peters, 8 Pet. [33 U. S.] 591. Or using some other expression more comprehensive than the word "copyright," as here, and which standing alone meant naturally, as the facts doubtless were, only the copyright then taken out for only one term. Brooke v. Clarke, 1 Barn. & Ald. 396; Rundell v. Murray, 1 Jac. 311. Thus in the case of Nesmith v. Calvert [Case No. 10,123], the inventor assigned all the patent right he had or should procure and mature on the subject of clearing or burring wool; and it was held, that, under such particular expressions, a patent subsequently obtained on this subject passed to the assignee.

The act of parliament of 5 & 6 Vict. c. 45, § 2, which in certain cases confers the copyright on the employer rather than the employed, when writing for him under contract, and paid as for a job, conflicts with this view, if that provision be declaratory of what was law before. See Burke, Copyright, Append.; 1 Cox, 283; 1 Barn. & Ald. 396. If it was not declaratory, but new, it operates for the complainant, as showing that the law was different before. I am inclined to think it is a new provision, and not entirely unjust in its operation in such a state of facts, if the parties do nothing indicating some right of authorship to belong to the writer. If such a mere hirer of another to write or compile was before entitled to the copyright, why was this act of Victoria necessary? And if such a hirer of others was entitled before to take out a copyright, how does this act encourage and aid genius? It rather aids those kinds of patrons, who fatten on the labors of genius. It has been settled here, that one who gets others to engrave, and conceives the idea, but does not execute it himself, is not entitled to take out the copyright. Ambler, 164; Binns v. Woodruff [Case No. 1,424]. So it has recently been adjudged in the New York circuit court, that one, who does not himself compile, but hires another to do it for him, is not entitled to a copyright. But

as the defendant did advise and plan some concerning the first book, and paid the true author of it for the copyright, rather than claiming it on his own account, independent of that purchase and that payment, the plaintiff, from these facts, stands in a more doubtful position as to the extended copyright in the first book than in the second, and would have been in a position still more questionable, and hardly tenable, if the first book had not been published by the respondent with the plaintiff's name as author on its face, and, of course, admitting him prima facie to be entitled to an author's rights and privileges. But as to the second book, it does not appear to have been projected by the respondent or made by his procurement.

It may be remarked, in conclusion, that the taking out of the second term in each copyright, does not seem to be that to which it was likened by counsel, i. e., the strengthening of a defective title by one part owner. Co. Litt. 195; 5 Johns. Ch. 388; Flagg v. Mann [Case No. 4,847]. But it is rather like a new interest obtained by one after the original interest had expired. I do not propose to decide what should be the rule of damages here, till after a full disclosure. But as it has been somewhat discussed, I would throw out on it a few suggestions, which may be useful in this stage of the cause. As the bill does not set up printing and sales of copies by the respondent, but only a sale of licenses to others to do it, his counsel here argued, that nothing has been done or is anticipated, which violates the plaintiff's rights, if entitled to the second term alone; and I do not see how the respondent can be made to account for those sales, except by treating him like an agent or trustee of the plaintiff in making them. The purchasers of the right from him and the actual publishers would also be made to account, either under a new bill or as parties to this, if within our jurisdiction. There would, however, be but one satisfaction allowed for the same sales. Yet, so far as regards a sale of what Fowle is not entitled to, and taking pay therefor, that is a positive, an actual intermeddling with the plaintiff's property; an injury, by inducing others to publish under him and not under the plaintiff; and is to be checked, not as merely fearing an injury, quia timet, but as an actual conversion of another's property to his use. It sells the rights of the plaintiff and pockets the gains, and lessens the value in the market to the plaintiff of what is left. And why should he not be treated as an agent or trustee for what he takes for my property, a copyright to so much, and for so long? The respondent has got money, which ex æquo et bono belongs to the plaintiff, and he is a sort of trustee to account for it. It would exonerate the buyer pro tanto if he does, and hence only one be liable for the same use. And it is an incident to the injunction against what is wrong, that the

respondent should pay for all he has realized from the copyrights illegally.

It appearing to me then, that the title to these second copyrights belongs to the complainant, that the respondent has undertaken to sell them as if his own, in some cases, and declines to disclose to whom and for what amounts, his answer seems to be exceptionable in not making that disclosure; he must, therefore, proceed and state the facts in relation to them, and if they turn out to be as now supposed, he will be liable to account for what he has received, and an injunction must issue against his further use or sale of the last terms of the copyrights. If, on a further disclosure, it should turn out, that any of the receipts were more than six years before this bill was filed, a recovery for them may be barred by the length of time, as the statute of limitations is interposed by the respondent. There are cases, where, in matters of account, the statute does not apply at all; but whether this is one of them or not, cannot be seen till more is disclosed.

NOTE. All the title remains in a writer of an article or book, which he does not clearly convey or part with. See case of Bishop of Hereford v. Griffin [16 Sim. 190].