## Case No. 12,561.

### SCRIBNER v. STODDART et al.

[9 Reporter, 137; [1] 19 Am. Law Reg. (N. S.) 433; 8 Wkly. Notes Cas. 61.]

Circuit Court, E D. Pennsylvania. Dec. 29, 1879.

PRELIMINARY INJUNCTION—JURISDICTION — INJURY —EQUITY PLEADING AND PRACTICE—COPYRIGHTS AND PATENTS—OTHER SUITS — COPYRIGHT — ENCYCLOPÆDIA — USE OF ARTICLES THEREIN PUBLISHED SEPARATELY—REPRINT — INFRINGEMENT —PREPONDERANCE OF DAMAGE.

1. A preliminary injunction should issue only when the complaint is a proper subject of equitable cognizance, the plaintiff's right and the defendant's violation thereof are clear, and there are no special facts which would render the use of the process unjust.

2. There is no material difference between the principles and rules applicable to equity proceedings in copyright or patent-right cases and those applicable to other suits in equity.

[Cited in Hanson v. Jaccard Jewelry Co., 32 Fed. 204.]

3. When an author having copyrighted a work subsequently permits it to appear in a foreign encyclopædia, there is sufficient doubt, as to his right to use the copyright to prevent the publication of a domestic reprint of said encyclopædia, to determine a chancellor against issuing a preliminary injunction.

4. Where the complaint was that the defendant was about to use, in a reprint of a foreign work, articles copyrighted and published separately in this country, and it appeared that the damage to the defendant from the issuance of an injunction would be far greater than that which could be suffered by the plaintiff through the refusal thereof, a preliminary injunction restraining the defendant from the use of said articles was refused.

[Cited in Hanson v. Jaccard Jewelry Co., 32 Fed. 204.]

Motion for preliminary injunction.

The facts in these cases, as they appeared by the bills and affidavits, were as follows: A. T. Black and others, trading as A. & C. Black, of Edinburgh, Scotland, were the proprietors of a certain publication known as the Encyclopædia Britannica, and in 1875 they began the publication of the ninth edition of their work, which was imported into the United States and sold at $9 per volume, the work to be completed in twenty-one volumes. Shortly after its appearance Stoddart & Co.

of Philadelphia announced an American reprint of the Encyclopædia, and obtained subscriptions therefor at $5 per volume; the subscriptions were very numerous, and to compete with the American edition, the Scotch publishers sent over a cheap edition of their work to be sold at $5 per volume, and appointed Scribner, of New York, their American agent. When volume 9 of the foreign edition was published it contained a notice that certain articles therein had been entered for copyright, and were the property of Little, Brown & Co., of Boston, agents for the expensive edition of the encyclopædia. This volume was reprinted by Stoddart & Co. and the notice of the copyright appeared therein. When volume 10 was issued it contained notices of copyright of certain articles therein, one of which was written by Lodge. When the reprint of volume 10 was about to be issued, containing the said articles, bills were filed to prevent the publication of the articles, alleging that the articles referred to had been published in this country before their publication abroad as part of the encyclopædia. The plaintiffs moved for a preliminary injunction. The defence set up, inter alia, that they had been at very great expense in the preparation of the reprint.

T. H. Edsall and J. K. Valentine, for the motion.

We make this motion under Rev. St. §§ 4952, 4956, and Act June 18, 1874, § 1 [18 Stat. 78]. The articles were duly registered and published as books and are now incorporated in the defendant's tenth volume. A foreign assignee of a copyright can sue; the only limitation as to citizenship has reference to the author. As to Lodge's case, that is the case of an American author who has published and copyrighted his book, and afterwards consented to its use in an English encyclopædia. As the foreign publisher could publish the book without the author's consent, does the author lose his rights at home by giving his consent? There is a difference between the case of an invention and a writing. Bartlette v. Crittenden [Case No. 1,082]. The republication in England is not a dedication to public use. The defendants, of course, could not republish Lodge's work in the same form as that in which he published it, neither can they publish it by joining it with other works. The form is immaterial. Gray v. Russell [Id. 5,728]; Mawman v. Tegg, 2 Russ. 385. See, also, Keene v. Wheatley [Case No. 7,644]. Where a copyright has been granted, and there is no question as to the right or the piracy, a preliminary injunction will issue. Curt. Copyr. 321.

J. R. Sypher and S. C. Perkins, contra.

These cases cannot be considered as involving only a discussion of abstract legal propositions; the court must consider whether the application is made bonâ fide, and whether the plaintiff's acts are not merely

[1] [Reprinted by permission.]

evasions of the copyright laws and an attempt to obtain possession of the canvassing field for business purposes. A copyright cannot be taken out in the middle of a work,—the encyclopædia is an entire work,—therefore the absence of any notice of copyright in the early volumes is a dedication to the public. An injunction will not be granted where there is an ample remedy at law; where the injury sought to be relieved against does not involve irreparable damage; where there will be greater damage to the defendant from granting than to the plaintiff from refusing the injunction; where title is not clear: where there is a doubt in the mind of the chancellor arising from any cause; where there has been any acquiescence or encouragement by the plaintiff in or to the acts complained of. Saunders v. Smith, 3 Mylne & C. 711; Babcock v. New Jersey Stock Yard Co., 5 C. E. Green [20 N. J. Eq.] 298; Richard's Appeal, 7 P. F. Smith [57 Pa. St.] 105. Here the remedy at law is ample, viz. an action for damages for the unlawful use of the copyrighted articles. The damage to plaintiff is almost inappreciable, while an injunction would prevent the defendants from fulfilling their contract with their subscribers for a full reprint of the English edition. There are doubts as to the title in Black's case. The plaintiff's have acquiesced and given encouragement to the publication of the American reprint, by not giving notice of copyright until the publication of the ninth volume.

BUTLER, District Judge. A preliminary injunction should issue whenever the complaint is a proper subject of equitable cognizance, the plaintiff's right involved, and the defendant's violation of it are clear, and the case exhibits no special facts which would render the use of the process unjust; and it should not issue under any other circumstances. Judge Story (2 Eq. Jur. 290, 291) in substance says the propriety in granting an injunction rests solely in the sound discretion of the court; and that the writ will not, therefore, be granted where it would operate oppressively, inequitably, or contrary to the real justice of the case. The courts decline to lay down any rule which shall limit their discretion to grant or withhold the writ, as respects particular cases. The exercise of the discretion is attended with no small danger, from the summary nature of the proceeding, and the consequent liability to mistake. The writ ought, therefore, as this author says, to be granted with extreme caution, and only in very clear cases; otherwise, instead of being an instrument to promote the public as well as private welfare, it will become a means of extensive and perhaps irreparable injustice. Judge Baldwin, in Bonaparte v. Railroad Co. [Case No. 1,617], says: "There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or is more dangerous in a doubtful case, than the issuing a preliminary injunction."

It is a mistake to suppose that there is any material difference between the principles and rules applicable to equity proceedings in patent right or copyright cases, and any other cases of which courts of equity take cognizance. Mr. Curtis, in his work on Patent Rights (page 400), says: "The grounds of equitable jurisdiction in patent cases are the prevention of irreparable mischief, the suppression of multiplicity of suits, and the more complete discovery of facts than can be had at law." The act of congress has simply applied equitable remedies to patent cases, to be administered according to the rules and principles governing equity proceedings elsewhere. These remedies, in all proper cases, would doubtless have been applied without the statute. To entitle a complainant to preliminary injunction where a patent right is involved, the existence of the right, and the evidence of infringement, must be clear, and, as in all other instances where the writ issues, the case must exhibit no circumstances which would make the remedy unjust. As Mr. Curtis further says, at page 549: "Courts of equity are loth to grant the writ unless the plaintiff's right is very clear, and especially where an account by the defendant will answer all reasonable purposes." He further says, at page 560, in substance, that the effect on the defendant's business or interests, must also be considered; for inasmuch as the granting of the writ depends upon the sound discretion of the court, exercised upon all the circumstances of the case, and the object being to prevent mischief. the writ will not be issued where very great injury would be likely to ensue to the defendant from granting it, and little or none to the plaintiff from withholding it. Judge Curtis, in Forbush v. Bradford [Case No. 4,930], says: "In acting on applications for temporary injunctions to restrain the infringement of letters patent, there is much latitude for discretion. The application may be granted or refused unconditionally, or terms may be imposed on either party for making or refusing the order. The state of the litigation, the nature of the improvement (or other thing patented), the character and extent of the infringement, and the comparative loss which will be occasioned to the respective parties, by allowing or denying the motion, must all be considered in determining whether it should be allowed or refused." Drone, in his work on Copyrights, at page 524, says: "When the piracy is important. and the consequent injury to the plaintiff material, an injunction is usually granted, notwithstanding serious consequences to the defendant, unless there is perhaps an inequitable disproportion between the injury complained of and the remedy asked." And further says, in substance, that where the objectionable matter forms but a small part of the defendant's publication, the court will compare the damage done thereby to the plaintiff

with that which the defendant will sustain if the injunction be granted; and will hesitate to destroy the entire work in order to redress a slight injury; that the court must sometimes incur the hazard of causing some injurious consequences to one party or the other, and the aim should be to take that course which seems to be most equitable under all the circumstances. This author also says, at page 517: "If the court is not reasonably satisfied that the plaintiff had a valid copyright, or that piracy has been committed, an injunction will not be granted." And at page 516 he says: "The question of granting a temporary injunction is affected by many considerations. It depends chiefly on the extent of doubt as to the validity of the copyright, whether it has been infringed; the damages which the plaintiff will sustain if it is withheld, and the defendant suffer if it is granted."

In Keene v. Wheatley, cited by the complainant in this case, Judge Cadwalader refused the preliminary writ, although he was satisfied of the plaintiff's right, and the defendant's infringement; because he believed the extent of the plaintiff's injury (to be sustained prior to the final hearing) could readily be measured, and be compensated in money, and the danger of loss to the defendant be thus avoided. I am not satisfied of the validity of the copyright granted to the Messers. Black. I do not think anybody in the cause is fully satisfied. I think it may safely be said that the question is open to very serious doubt. I do not propose to say more respecting it at this time. That of the other plaintiff, as respects the copyright itself, is freer from doubt. There is certainly, however, room for considerable doubt about the right to use it to prevent the reprint and publication of the encyclopædia in which he has allowed it to appear. I entertain such doubt. It does not make any odds whether the doubt which the court entertains upon an application such as this, arises upon consideration of the facts presented independently of the right upon which the claim is based, or whether it arises as a matter of law respecting the right. The doubt in my mind as respects both of these cases, is such that, without more, I should feel it to be my duty to deny this motion and decline the issuing of an injunction until the questions thus involved are fully, carefully, and deliberately considered and settled. Were I to issue the process in advance of this I would incur the danger of doing serious injustice to the defendants.

In addition to this, I believe that the injury likely to result to these plaintiffs, from a denial of this motion, will be very much less than that which would be suffered by the defendants, if it was granted. In considering the injury likely to ensue to the plaintiffs, it must be borne in mind that we are to look simply at the profits or advantages likely to be obtained by the plaintiffs from the publication and sale of these copyrighted works, independently of this encyclopædia. They do not relate to subjects of very great general interest. It is not probable the demand for them would be extensive. Thus far there is no evidence before the court of any demand. I do not remember that there is any evidence that any considerable number of either has been published for circulation. I think, with the information the court now has, I am justified in inferring that they were prepared for use in this encyclopædia, and with no very serious purpose to print them separately for circulation. Then again, I am to consider the loss likely to ensue to the plaintiffs from these defendants' work supplying the demand for these copyrighted works as separate publications. And only in that view am I to consider it. Now will this encyclopædia at all affect that demand? Is it probable that a single individual purchaser who desires these articles or works as separate publications will be lost to the owners? Is it probable that the opportunity of selling to any individual will be lost to the owners of these copyrights—the plaintiffs—by reason of the publication of these articles in the encyclopædia? Then again, is it probable that the reprinting of these articles in the defendants' book will increase the circulation of the encyclopædia itself to any considerable extent? It must be borne in mind in this respect, that these plaintiffs have consented to the publication of these articles in the encyclopædia. Now, is it probable that the defendants' publication will increase the circulation of the encyclopædia at all? In other words, if the reprint were not published and circulated, may it not be inferred, reasonably, that the great number of those who will purchase the reprint, would have purchased the original work? In other words, is not this contest between the British publisher and these defendants, a contest for the field, for the encyclopædia, and if the defendants' work were not printed, would not the field be covered by the foreign publisher? I have said enough to indicate the thought already, probably, that the defendants' publication will not increase the circulation of these articles through the means of the encyclopædia at all. If it does increase it, in my judgment it will be but to a very limited extent. The defendants' publication is said to be cheaper. A few persons may be induced to buy it who would not buy the other for that cause; but the character of these publications, and the character of the individuals who subscribe for or buy them, is such as precludes the idea that the circumstances would make any material difference in the circulation of the work. Looking at the subject in all its aspects, I am inclined to think that the injury to be sustained by the plaintiffs from the republication of these articles in the reprint of the encyclopædia, between this, at all events, and the final decree in this case, must be very small indeed.

On the other hand, the injury to the defendants from the issuing of this writ at this time must be serious. There can be no room for doubt about that and the seriousness of it does not arise from the importance of these articles of themselves, for they do not strike the court as being very important. But an earnest contest has arisen between the foreign publisher and his agents and these defendants,—a contest for the field for this work,—which has led to anger, ill-will—probably to a resort to means on the one side and the other that should have been avoided. Now if the court at this time was to interfere in such way that the defendants could not reproduce the foreign edition (it makes no odds that they might have added an occasional article), but if it could be said by the publisher of a foreign edition and his agents that this is not a reprint, that these defendants are forbidden and prohibited from reprinting a part of the matter found in the foreign edition, it would, in my judgment, virtually drive the reprint out, and leave the field to the other side and it would be occupied and harvested probably before this case was concluded.

The defendants are not to be looked upon simply in the light of ordinary wrongdoers. This is not an ordinary case. At the time they commenced this publication there was nothing unlawful in what they did. To reproduce a foreign publication is not wrong. There may be differences of opinion about the morality of republishing here a work that is copyrighted abroad; but the public policy of this country, as respects the subject, is in favor of such republication. It is supposed to have an influence upon the advance of learning and intelligence. The defendants at the beginning could not know that before this work was completed and fully issued it would contain articles which were copyrighted. They had seen previous editions of this work published, one after another, without any such obstacles being cast in the way of a reprint. There was nothing, therefore, to warn them of the insertion of such matter. Indeed, they had every reason to believe that there would be nothing of the kind. They are not to be blamed, therefore, for what they did up to this time. Whether they are wrong now depends altogether upon how the questions to which I have adverted are decided. But to interfere with them at this time would, in my judgment, be almost, if not quite, disastrous. I will not enlarge upon the subject.

There is another question involved here that I will not consider; that which affects the bona fides of the application for these writs; the question whether or not they are really intended for the protection of these copyrights, or for the purpose of giving to the publisher of the foreign edition of this encyclopædia an advantage in the contest for this field. That question I will not consider. I will say nothing about it. It is not neces-

sary for the purposes of this motion. For the reasons indicated the writ is refused.

Writ refused.