AMERICAN CODE CO., Inc., v. BENSINGER et al.

(Circuit Court of Appeals, Second Circuit. June 23, 1922.)

No. 316.

1. Copyrights ⬅️4—List of code words may be copyrighted.
    A list of code words for use in transmitting telegraphic messages is copyrightable.

2. Copyrights ⬅️36—Author's right to monopoly determined by statute.
    An author's right to monopoly of his publications is measured and determined by the copyright statute (Comp. St. § 9517 et seq.).

3. Literary property ⬅️5—Any person may publish work previously published without copyright.
    Publication of an intellectual publication without copyrighting dedicates it to the public, and any person may thereafter publish it for his own benefit.

4. Copyrights ⬅️36—Foreign copyright affords no protection against piracy in this country.
    A British copyright protects the author in England, but, unless he also copyrights the work in the United States, affords him no protection against any one who brings out in this country a piratical edition of the work; copyright laws having no extraterritorial operation, unless otherwise provided.

5. Copyrights ⬅️12—Affords no protection to piratical production of foreign work.
    The American publisher of a piratical production of a work copyrighted in a foreign county cannot secure the fruits of his piracy by taking out an American copyright.

6. Copyrights ⬅️12—Work must be original with the author.
    To be copyrightable, a work must be original, in that the author has created it by his own skill, labor, and judgment.

7. Copyrights ⬅️12—Work including original matter and matter previously dedicated to the public is copyrightable, but protection covers only original work.
    If one takes matter which has been dedicated to the public by publication without copyright, and adds thereto materials which are the result

'of his own efforts, a copyright thereon is not void, but valid as to the new and original matter; but the degree of protection is measured by what is actually copyrightable in the work.

8. **Copyrights ☞77—Printer, publisher, and vendor each an infringer.**

The printer, the publisher, and the vendor of an infringing work each is an infringer.

9. **Copyrights ☞73.—Right to injunction exists, both under statute and independent thereof.**

The remedy by injunction against infringement of a copyright exists, both independently of statutory provisions and under the express provisions of Act March 4, 1909, § 36 (Comp. St. § 9557).

10. **Appeal and error ☞954(1)—Injunction ☞135—Preliminary injunction discretionary, and not set aside, unless abuse of discretion, etc., clearly shown.**

The granting or withholding of a preliminary injunction rests in the sound discretion of the trial court, and an order granting such injunction will not be set aside on appeal, unless it is clearly shown that the court abused its discretion, or was mistaken in the view it took of the situation.

11. **Injunction ☞132—Preliminary injunction may be granted, when court has jurisdiction to grant permanent injunction.**

Whenever equity has jurisdiction to grant an injunction by final decree, it has jurisdiction to grant preliminary injunction, the basis for which is the maintenance of the status quo.

12. **Injunction ☞144—Case warranting decree on final hearing need not be made out to warrant preliminary injunction.**

To make out a case warranting a preliminary injunction, the complainant need not make out such a case as would entitle him to decree on final hearing.

13. **Copyrights ☞85—Temporary injunction ordinarily granted, when prima facie case made.**

Where plaintiff makes prima facie case in regard to existence of copyright and its infringement, a temporary injunction will as a general rule be issued.

14. **Copyrights ☞83—Prima facie case for temporary injunction held made.**

In suit for infringement of copyright on telegraphic code, plaintiff *held* to have made a prima facie case of existence of copyright and infringement to entitle it to temporary injunction.

15. **Injunction ☞144—Demurrable complaint will prevent.**

A demurrable complaint will prevent a preliminary injunction.

16. **Copyrights ☞82—Complaint held sufficient.**

In suit for infringement of copyright on telegraphic code, bill of complaint *held* sufficient.

17. **Copyrights ☞82—Not necessary to allege steps by which plaintiff became proprietor.**

In suit for infringement of copyright, it is not necessary to allege the various steps by which plaintiff became proprietor of the work.

18. **Copyrights ☞29—Error in date in notice of copyright held not to invalidate it.**

That the notice of copyright inserted in a book published in January, 1915, but the printing of which commenced in 1914, used the earlier date, did not invalidate the copyright, as the error was in favor of, and not against, the public.

19. **Copyrights ☞85—Affidavits for injunction should show actual copying of copyrighted matter.**

On application for preliminary injunction in suit for infringement of copyright, plaintiff's affidavits should satisfactorily show that defendant has actually copied into his book copyrightable matter taken from plaintiff's work.

---

☞For other cases see same topic & KEY-NUMBER in 'all Key-Numbered Digests & Indexes

**20. Copyrights ⊘═85—Bond on temporary injunction held inadequate.**

A bond in the sum of $250 on temporary injunction in suit to restrain infringement of copyright was entirely inadequate, and should be increased to $5,000, where defendant had spent approximately $15.000 in printing the alleged infringing books, and had on hand books of the approximate value of $50,000.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the American Code Company, Inc., against Carl Bensinger and others. From an order granting a temporary injunction, the defendants Michael Wolins and others appeal. Affirmed in part, and remanded in part, with directions.

Morris Kirschstein, of New York City, for defendants appellants.
George H. Gilman, of New York City, for complainant appellee.

Before ROGERS, HOUGH and MAYER, Circuit Judges.

ROGERS, Circuit Judge. This suit is brought for infringement of a copyright. A preliminary injunction was issued on February 14, 1922, restraining the defendants during the pendency of the action from printing, publishing, binding, selling, or offering for sale copies of any book containing matter copyrighted by the complainant and found in a certain work entitled "A B C Code, Fifth Edition, Improved."

The complainant alleges in its bill that in the year 1914 it was the proprietor of the book above named, and that the work contained a large amount of matter wholly original with complainant, and all of which is complainant's private property. The bill also alleges that on January 29, 1915, the complainant published the book, and that the publication bore upon the title page thereof the notice of copyright required by the Act of Congress of March 4, 1909 (Comp. St. §§ 9517–9524, 9530–9584), being the words "Copyrighted 1914 by the American Code Company, Inc.," and that the same notice was affixed to each copy thereof published or offered for sale in the United States. It further alleges that the text of all copies of the said book was printed from type set within the limits of the United States, or from plates made within the United States from type set therein, and the printing and binding of said book were performed within the limits of the United States. It states, too, that thereafter, on February 15, 1915, the complainant caused to be filed with the Register of Copyrights in Washington, District of Columbia, two printed copies of said book of the best edition issued and produced, in accordance with the manufacturing provisions specified in section 15 of the Copyright Act (Comp. St. § 9536), and a certificate of registration was then and there duly issued to the complainant. Then the complaint goes on to allege:

"That thereafter, and in the year 1921, the defendant Wolins published a certain book entitled 'A B C Code Fifth Edition Improved,' which contained a large amount of the original copyright matter taken, copied, and pirated from the said complainant's book, 'A B C Code Fifth Edition Improved,' and the defendant Wolins sold and is selling the said infringing book, and threatening

⊘═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to continue the sale thereof, and the defendant Jacob Sadowsky is performing the binding of the said book, and the defendants Bensinger, Bishop, and Jack are selling and offering for sale and acting as the selling agents of the said infringing book."

The complaint contains the prayers for relief usual in such cases, asking for an injunction, an account, and for the profits and damages, and for the destruction of the infringing books, and of all plates or other means for making the same, and for the impounding of all infringing books during the pendency of the suit.

The defendant Wolins admits that he published the book entitled "A B C Code Fifth Edition Improved," but claims that he had a perfect right to do so. He claims that the plaintiff's work, with the exception of certain matter, is an exact copy of a work entitled "A B C Electric Telegraphic Code Fifth Edition," of which work a British subject is the author; that this book was copyrighted by its author in Great Britain and Dominions, and that Eden Fischer & Co., of London, are the exclusive owners of the copyright, and have been publishing the book in Great Britain for the past 20 years or more; that the English book was not copyrighted in the United States by its author or the proprietor, and in consequence publishers in the United States printed pirated editions thereof; that among such publishers is the plaintiff herein, who since 1901 has published and sold in the United States and abroad pirated editions of the said "A B C Electric Telegraphic Code Fifth Edition"; that on the front sheet of this pirated edition appears the name of the author, W. Clausen-Thue, and at the end of the preface appears the words "London, 1901"; that the plaintiff, when it published this pirated edition, placed no notice of copyright thereon, and that this work has become and is open to the public for the purpose of printing, selling, or otherwise reproducing copies thereof; that in addition to this pirated edition the plaintiff published in 1908, without notice of copyright, a Spanish edition of the said book, and that the same is public property and may be reprinted and sold by any one in the United States; that in 1915 the plaintiff published another Spanish edition, entitled "Clave Telegraphica Commercial Universal A B C Quinta Edicion Mejorada," which is the Spanish for "A B C Telegraphic Code Fifth Edition Improved"; that this Spanish edition was published by plaintiff without any notice of copyright whatsoever.

The object of the work which is alleged to be infringed is to enable telegraphic messages to be transmitted with simplicity, economy, and secrecy. Under the plan of the book, every sentence is identified with and represented by a single code word. Very frequently a single code word represents a complete message, and in other cases it represents from 4 or 5 to more than 20 ordinary words. The secrecy of the message between two persons can be made absolute between two persons, even though any other person has command of the telegram and of the contents of the volume. This is because every sentence is identified with a code number of five figures to be found in 1234567890, which can be represented by a word, sentence, or group of 10 different letters of the alphabet, after the same manner as a tradesman places a private mark on his goods to denote price.

What the plaintiff appears to have done is to take the English work of W. Clausen-Thue, without the permission of the English author or owner, and add to it certain original matter of his own, and copyright the whole in its own name. For example, in the sample in the margin appears a portion of a page of the work in question.[1] The column of five letter code words found to the left of the page contains the new matter which the plaintiff claims to have added. There are 1,124 of such pages, with sixty lines to each page. What additional matter the plaintiff has added we need not now inquire.

[1] That a list of words such as is contained in the column of new matter above referred to is copyrightable we think must be conceded, in accordance with what this court decided in Jeweler's Circular Publishing Co. v. Keystone Publishing Co., 281 Fed. 83, which was decided in February of this year.

[2-4] It is the settled law of this country and England that the right of an author to a monopoly of his publications is measured and determined by the copyright statute. Holmes v. Hurst, 174 U. S. 82, 85, 19 Sup. Ct. 606, 43 L. Ed. 904. Publication of an intellectual production without copyrighting it causes the work to fall into the public domain. It becomes by such publication dedicated to the public, and any person is thereafter entitled to publish it for his own benefit. Caliga v. Inter-Ocean Newspaper Co., 215 U. S. 182, 30 Sup. Ct. 38, 54 L. Ed. 150. If a British author, upon publication in England, copyrights his book in that country, the copyright protects him in that country; but, unless he has also copyrighted the work in the United States, his English copyright affords him no protection against any one who brings out in this country a piratical edition of the work. The copyright laws of one country have no extraterritorial operation, unless otherwise provided. Ferris v. Frohman, 223 U. S. 424, 32 Sup. Ct. 263, 56 L. Ed. 492.

[5, 6] And an American publisher of the piratical production cannot secure the fruits of his piracy by taking out a copyright under the Copyright Act. Ferris v. Grohman, supra. As was said in Walter v. Lane, [1900] A. C. 539, 558:

"Of course, if an author of a book is inscrupulous enough to pirate and include in it the protected composition of another, no registration could give him property in that which he had stolen."

| [1] Code No. | | Code Words. | January—continued. |
| --- | --- | --- | --- |
| edojr | 22770 | Jacapu | 15th day of January |
| edoks | 22771 | Jacareais | 16th day of January |
| edolt | 22772 | Jacassant | 17th day of January |
| edomu | 22773 | Jacconet | 18th day of January |
| edonv | 22774 | Jaceatis | 19th day of January |
| edoow | 22775 | Jacebas | 20th day of January |
| edopx | 22776 | Jacendi | 21st day of January |
| edoqy | 22777 | Jacetanos | 22nd day of January |
| edorz | 22778 | Jacherant | 23rd day of January |
| edosa | 22779 | Jachtclub | 24th day of January |
| edotb | 22780 | Jachten | 25th day of January |
| edouc | 22781 | Jachtiger | 26th day of January |
| edovd | 22782 | Jachtriem | 27th day of January |
| edowe | 22783 | Jachtrok | 28th day of January |
| edoxf | 22784 | Jachtslot | 29th day of January |
| edoyg | 22785 | Jachtvang | 30th day of January |
| edozh | 22786 | Jachtwet | 31st day of January |

This was said in an English court of the law of that country. It is equally true of the law of this country. It is a fundamental principle that a work to be copyrightable must be original, in that the author has created it by his own skill, labor, and judgment. Stevenson v. Harris (D. C.) 238 Fed. 432; Pagano v. Chas. Beseler (D. C.) 234 Fed. 963.

[7] If one takes matter which lies in the public domain, or which has been dedicated to the public by publication without securing copyright under the acts of Congress, and, adding thereto materials which are the result of his own efforts, publishes the whole and takes out a copyright of the book, the copyright is not void because of the inclusion therein of the uncopyrightable matter, but is valid as to the new and original matter which has been incorporated therein. It is necessary, however, to keep in mind the distinction between copyrightability and the effect and extent of the copyright when obtained. The degree of protection afforded by the copyright is measured by what is actually copyrightable in it; that is, by the degree and nature of the original work. See Dicks v. Brooks, L. R. 15 Ch. Div. 22. In Scribner v. Stoddart, 21 Fed. Cas. 876, No. 12,561, it is said:

"To reproduce a foreign publication is not wrong. There may be differences of opinion about the morality of republishing here a work that is copyrighted abroad; but the public policy of this country, as respects the subject, is in favor of such republication. It is supposed to have an influence upon the advance of learning and intelligence."

[8] It is claimed that the defendant Wolins has appropriated the plaintiff's book, including the original English work, and also the new matter introduced into it by the plaintiff, and has published the same. The defendant Sadowsky is joined as defendant; it being alleged that he is binding the book. The defendants Bensinger, Bishop, and Jack are alleged to compose the firm of Rose Printing Company, who are selling or offering to sell the infringing book at retail. The joinder of these parties as defendants proceeds upon the theory that infringement of a copyright is a tort, and that all persons concerned therein are jointly and severally liable. Gross v. Van Dyke Gravure Co., 230 Fed. 412, 144 C. C. A. 554. It is established that the one who prints an infringing work is an infringer. Belford v. Scribner, 144 U. S. 488, 12 Sup. Ct. 734, 36 L. Ed. 514; Baschet v. London Illustrated Standard Co. [1900] 1 Ch. 73. So is the publisher. Baschet v. London Illustrated Standard Co., supra. As likewise is the vendor. Greene v. Bishop, 10 Fed. Cas. 1128, No. 5,763.

[9] In cases of infringement of copyright, an injunction has always been recognized as a proper remedy, because of the inadequacy of the legal remedy. The remedy by injunction exists independently of express provision therefor in the copyright statutes; it being granted on the well-established equitable principle that a court of equity will protect a legal right where the remedy at law is inadequate. Pierpont v. Fowle, 19 Fed. Cas. 652, No. 11,152; Carlten Illustrators v. Coleman & Co., Ltd., [1911] 1 K. B. 771. But the copyright statutes, both in the United States and in England, expressly authorize the granting of injunctions against infringement.

The Copyright Act of March 4, 1909, § 36 (Comp. St. § 9557), expressly gives the court power "upon bill in equity filed by any party ag-

grieved, to grant injunctions to prevent and restrain the violation of any right secured by said laws, according to the course and principles of courts of equity, on such terms as said court or judge may deem reasonable." The language of the act, it will be observed, is that the injunctions shall issue in this class of cases "according to the course and principles of courts of equity."

[10] Now, it is according to the course and principles of courts of equity that the granting or withholding of a preliminary injunction is a matter resting in the sound discretion of the trial court, and that an order granting the same will not be set aside on appeal, unless it is clearly shown that the court abused its discretion, or was mistaken in the view it took of the situation, with reference to which the order was made. Werner Co. v. Encyclopaedia Britannica Co., 134 Fed. 831, 1024, 67 C. C. A. 281. A careful consideration of the record in the case now before us has failed to convince us that the court below abused its discretion in awarding the injunction, so as to make it either necessary or proper for this court to reverse its action in granting it. It may, however, be desirable that the amount of the bond which the plaintiff was required to give for the protection of the defendant, in case there should be a reversal on the merits, is another question, and will be considered in another part of this opinion.

[11, 12] Wherever equity has jurisdiction to grant an injunction by final decree, it has jurisdiction to grant a preliminary injunction. The real basis for the preliminary injunction is the maintenance of the status quo. Buskirk v. King, 72 Fed. 22, 25, 18 C. C. A. 418; Ladd v. Oxnard (C. C.) 75 Fed. 703, 732. And to make out a case warranting a preliminary injunction the complainant need not make out such a case as will entitle him to a decree on final hearing.

[13] We are not unaware that there are a goodly number of cases in which courts have expressed the opinion that preliminary injunctions ought not to issue, except in clear cases. In the more recent copyright cases, however, there appears a disposition to grant the injunction somewhat more freely than formerly. And in Weil's American Copyright Law, § 1410, p. 514, it is said:

"Many cases say that such [preliminary] injunctions will only issue in clear cases, or where the court is not in doubt, on the whole, either as to the law or facts. It should be noted, however, that the modern tendency is to issue temporary injunctions more freely than in earlier times, and that each case really, at bottom, rests upon its own peculiar facts."

We think the rule is correctly laid down in Drone on Copyright, p. 516, where it is said:

"Although the matter may not be wholly free from doubt, yet if the plaintiff makes out a prima facie case, and the court is reasonably satisfied that a piracy has been committed, a temporary injunction will usually be granted, especially if the consequences are likely to be more serious to the plaintiff if the injunction is withheld than they will be to the defendant if it is granted."

Where the plaintiff has made a prima facie case in regard to the existence of the copyright and its infringement, a temporary injunction will, as a general rule, be issued. George T. Bisel Co. v. Bender (C. C.) 190 Fed. 205; Da Prato Statuary Co. v. Giuliani Statuary Co. (C. C.) 189 Fed. 90.

[14] We do not deem it necessary to recapitulate the facts of this case, which have been set forth at the beginning of this opinion. It is enough to say that they make out, in our opinion, a prima facie case in the plaintiff's favor.

[15-17] A demurrable complaint will prevent a preliminary injunction. Ladd v. Oxnard (C. C.) 75 Fed. 703. But the bill of complaint seems to us sufficient, if not in its original, then in its amended, form. It alleges title in the complainant, and in its amended form that it is still the owner of the copyright. It is not necessary to allege the various steps by which the plaintiff became the proprietor of the work. The notice of copyright is in statutory form. See West Publishing Co. v. Edward Thompson Co., 176 Fed. 833, 836, 100 C. C. A. 303.

[18] The fact that the plaintiff did not actually publish the book until January, 1915, and that the printed notice of copyright, inserted when the printing was begun, reads "1914," seems to us a matter of no consequence. Baker v. Taylor, 2 Fed. Cas. 478, No. 782, which is relied upon by defendant does not sustain his position. In that case the title page, containing the notice, was deposited in the clerk's office in 1846, and the notice as printed in the book stated that the entry was made in 1847. In that case the mistake made claimed a date a year too late, thereby claiming a year longer for the monopoly than the party was entitled to. But in the case now being determined the notice claims a year less than the Copyright Act allows. The distinction is one with a difference, and the mistake is not to be regarded as invalidating the notice. The error made is in favor of the public in this case, and against the public in the other case. And the Supreme Court held in Callaghan v. Myers, 128 U. S. 617, 654, 657, 9 Sup. Ct. 177, 32 L. Ed. 547, that copyright is not vitiated by an error in favor of the public.

[19] In an application for a preliminary injunction in such a case as the one now before the court, the plaintiff's affidavits should satisfactorily show that the defendant has actually copied into his book copyrightable matter taken from the plaintiff's work. In the affidavit made by the president of the plaintiff corporation that official states:

"I have compared the two books, and find that the text thereof, with the exception of advertisements, is identical, including part 3 and the mutilation table. I have been in the code business for 29 years, and from my familiarity with such books am confident that the infringing book was produced by photo-engraving from the plaintiff's book. This would be the only practicable way of making a book which could be used in connection with former editions of the code, or with the edition published by the plaintiff, as it is essential that the code words in messages be identical to avoid errors in translation. In addition, I have made a casual comparison of the two books, and find certain peculiarities in the plaintiff's book identically reproduced in the other. For example, in the mutilation table, as the plaintiff also publishes a Spanish edition, Spanish as well as English words are used in the heading. In the last line but one of the directions for use the word 'are' is slightly misplaced. On page 6111A the last letter on the page resembles a 3. The headings of pages 614A, 615A, 616A and 617A, show slight irregularities in the position of the A. On page 971, in the line numbered 53521, there is a slight speck under the word aullabas. In line 53559 there is a curved line in the A of Auralium."

It seems that Wolins has appropriated everything the plaintiff copyrighted, and has reproduced the same by photo-lithographic processes, and is proposing to sell it at a much cheaper rate than the plaintiff.

This, of course, he cannot be permitted to do. In what we have said we are not passing judgment, except on the prima facie case. What may be shown, when the case comes to be heard on the merits, as to the plaintiff's title to the copyrighted work, we do not now know.

Certain questions were raised by defendant which we do not deem of sufficient importance to merit discussion. They have not been overlooked, but we cannot help regarding them as trivial.

[20] It appears from the affidavit which defendant Wolins, presented to the court below in opposition to the motion for a temporary injunction, that as yet he has sold none of the books printed by him and which are alleged to infringe, but that he has gone to considerable expense in printing said books, having expended approximately $15,000, and that he has now in stock bound books ready to be sold and unbound books of the approximate value of $50,000. The temporary injunction puts the defendant's business practically at a standstill.

When an order to show cause why a preliminary injunction should not issue was obtained, a temporary restraining order was granted on the complainant's giving a bond in the sum of $250. Afterwards, when the motion for the preliminary injunction was heard and granted, the order granting it stated that it was "without the complainant giving any further bond." We think that, under all the circumstances of this case, the bond for $250 is quite inadequate. It is the opinion of this court that the complainant is entitled to retain its preliminary injunction, but on condition that it gives a satisfactory bond in the sum of $5,000. The questions involved are, in our opinion, sufficiently serious to make a bond for a merely nominal amount an inadequate protection.

The case is remanded, and the court is directed to modify its order, by making the issuance of the injunction conditioned upon the plaintiff's giving a bond in the sum of $5,000. The order in all other respects is affirmed.