Charles T. DOUDS, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

KNIT GOODS WORKERS' UNION, LOCAL NO. 155, INTERNATIONAL LADIES' GARMENT WORKERS' UNION, AFL–CIO, Respondent.

Civ. No. 16843.

United States District Court
E. D. New York.

Jan. 3, 1957.

Theophil G. Kammholz, Gen. Counsel, N. L. R. B., by Sidney D. Goldberg, Washington, D. C., for petitioner.

Lieberman, Katz & Aronson, by Vinson C. Aronson, New York City, for respondent.

RAYFIEL, District Judge.

The National Labor Relations Board, hereinafter referred to as the Board, filed its petition under Section 10(l) of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., hereinafter called the Act, for an injunction enjoining and restraining the respondent from violating Section 8(b) (4) (C) of the Act, which provides as follows:

"It shall be an unfair labor practice for a labor organization or its agents * * * to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is * * * forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 9."

The following facts are undisputed: James Knitting Mills, Inc., hereinafter called James, is engaged in the knit-goods business at No. 2887 Atlantic Avenue, in the Borough of Brooklyn, in this District. On or about June 29, 1956, an election was conducted by the Board to determine the collective bargaining representative of certain of James' employees, and, as a result thereof, Production Service Employees' Union Local No. 710, United Industrial Unions, hereinafter called Local 710, received a majority of the votes cast. On July 10, 1956, the Board, pursuant to the provisions of Section 9 of the Act, duly certified Local 710 as the exclusive bargaining representative of the production employees of James.

The petition charges, inter alia, that despite the aforementioned certification of Local 710 by the Board, Local 155 (a) has demanded that James recognize and bargain with it as the representative of James' employees, (b) in furtherance of said demand, has picketed at the James premises and appealed to its employees and the employees of others doing business with James not to perform services for their respective employers at the premises, and, (c) by those and other means, has induced and encouraged the employees of James and of others doing business with James to engage in strikes or in concerted refusals in the course of their employment to use, transport or handle goods or articles, or to perform services; further, that the object of the said acts and conduct of the respondent was to force or require James to recognize it as the bargaining representative of James' employees, although Local 710 has been duly certified as such.

The petition further alleges that on July 13, 1956 and July 16, 1956, respectively, James and Local 710 filed charges with the Board, wherein they alleged that the respondent had engaged and was then engaging in unfair labor practices, as the same are defined in Section 8(b) (4) (C), supra; that the said charges were referred to the Regional Director of the Board, under whose supervision they were investigated; and that as a result of said investigation the petitioner had reasonable cause to believe that the Board's complaint should issue against the respondent.

A hearing on the application herein was duly held on September 11 and 13, 1956, testimony was adduced and documentary evidence received, establishing (a) the certification by the Board on August 23, 1954, of Local 1499, Retail Clerks International Association, AFL, hereinafter referred to as Local 1499, as the exclusive bargaining representative of the production employees of James, (b) the collective labor agreement between James and Local 1499, expiring August 31, 1956, resulting from such certification, (c) the filing by James against the respondent on September 22, 1954, of charges of violations of Section 8(b) (4) (C), supra, (d) the issuance on November 15, 1954, by Chief Judge Inch of an order enjoining and restraining such violations, (e) the issuance by the Board of an order directing the respondent to cease and desist from its unfair labor practices during the effective period of the certification of Local 1499, and (f) the decree of the Court of Appeals enforcing said order.

The petitioner also introduced testimony to the effect that on three occasions, one in May, 1956, and two in June, 1956, one Teitler, a business agent of Local 1499, accompanied by one DeLeo, a representative of the respondent, called at the office of James and on each of said occasions conferred with its president, James Landro. The latter testified that on the occasion of the May visit Teitler told him, in substance, that he (Teitler) had been ordered to "give up James," that Local 1499 would not renew its agreement with James, and that he had brought DeLeo with him to negotiate a contract between James and the respondent. DeLeo, he said, told him that unless such a contract were negotiated James would be "put out of business." Landro testified further that on the occasion of both June visits DeLeo assured him that if James entered into a labor agreement with the respondent it would receive favored treatment at the hands of the union in its relations with its employees, adding, on the second June visit, on June 13, that if James failed to enter into such an agreement pickets would be stationed at its premises. At the time of the last-mentioned visit Local 1499 had already written James (letter of June 7, 1956, petitioner's exhibit 3) to the effect that it did not intend to renew its agreement with James because it "does not have jurisdiction over this type of shop." A copy of the letter, it stated, was being sent to the respondent.

On June 18, 1956 two of the respondent's representatives picketed the James premises, carrying signs bearing the following legend:

"This is organizational picketing—appeal to the production employees of James Knitting Mills—your present collective agreement expires on August 31, 1956. Don't permit strange unions who know nothing about knitgoods to represent you—join the Knitgoods Workers Union—Local 155, the recognized representative in the knitgoods industry—Knitgoods Workers Union Local 155—affiliated with the International Ladies Garment Workers Union AFL—CIO." (Petitioner's exhibit 1.)

The petitioner offered evidence of two incidents involving employees of concerns doing business with James. One Vito Pennola testified that on or about June 27, 1956 he called at the James premises to deliver certain material, and while approaching the entrance was informed by one of the respondent's pickets that there was a strike at the James plant. Pennola refused to make the de-

livery. He stated that he made a delivery to James in July, no pickets being present at the time.

Carl D'Alba, an employee of M. Taub Pearl Button Co., which transacts business with James, testified that in July, 1956, he called at the James premises to deliver merchandise ordered from his employer. As he approached the plant he observed two representatives of the respondent picketing the premises. One of them asked him where he was going, and when he informed him that he was about to make a delivery to James, the picket put his hand in front of him, and told him that he could not enter the plant. He made no delivery on that occasion. While the testimony respecting the date of the occurrence was somewhat less than conclusive I am inclined to believe that it took place after July 10, the date of the certification of Local 710. The respondent's picket who was involved in the incident did not testify at the hearing.

Joseph LaRocco, an officer of Local 710, testified respecting several conversations which he had had with the respondent's pickets after his union had been certified by the Board, but nothing which he reported the pickets as having said to him was violative of the Act. In substance the foregoing was the extent of the evidence offered by the petitioner at the hearing on September 11 and 13.

On October 16 the petitioner, by order to show cause, applied for leave to reopen the hearing for the introduction of the testimony of two additional witnesses, Marrianna Postilio and Emma Edwards. The former, it was claimed, was ill and unavailable on September 11 and 13, the dates of the hearing. This proceeding being equitable in nature the application was granted and the continued hearing set for October 26, providing the respondent with ample time for preparation.

Mrs. Postilio's testimony related to certain incidents which occurred on July 9 and on July 12 or 13. She testified that one Slotnick, a representative of the respondent, who was picketing the James premises, accosted her as she was entering the building, offered to pay her if she would carry a sign, and promised her a better job if she would join his union.

Mrs. Edwards' testimony was confined to an incident which occurred on September 17, which postdates not only the petition but also the hearing. She testified that one Frumkin, a picket for the respondent, approached her as she was entering the James plant on September 17, and made substantially the same offer to her as Slotnick had made to Mrs. Postilio.

In sum, then, the aforementioned acts, except (1) the picketing which continued after July 10, 1956; (2) the conversation between LaRocca and the pickets, (3) the D'Alba incident, and (4) the incidents referred to in the testimony of Mrs. Postilio and Mrs. Edwards, occurred prior to July 10, 1956, the date of the certification of Local 710, and virtually all of them took place after June 7, 1956, the date of Local 1499's letter to James, advising it that the former did not intend to renew its collective agreement.

Section 8(b) (4) (C), supra, provides that certain specified acts and conduct by an offending labor organization constitute unfair labor practices "if another labor organization *has been certified* as the representative of such employees." (Emphasis added.) In passing upon this application, therefore, I may consider only such acts and conduct as have occurred since the date of certification of Local 710.

 It is true that the picketing of the premises by representatives of the respondent continued after the certification of Local 710. But it is also true that shortly after such certification the legend on the signs carried by the pickets had been changed to read as follows:

"The production employees of James Knitting Mills are not members of the Knitgoods Workers Union, Local 155 (ILGWU)—we appeal to them to join

our union, the recognized representative in the knitgoods industry—Knitgoods Workers Union Local 155, affiliated with the International Ladies' Garment Workers Union—A.F.L.—C.I.O." (respondent's exhibit B). It will be noted that no reference is made therein to any other union. Those signs were mere appeals to the employees of James to join the respondent union, which claimed to be the recognized representative of workers in the knitgoods industry. The picketing was not accompanied by violence or threats of violence. The carrying of such signs did not extend beyond the activity expressly permitted by Subsection (c) of Section 8 of the Act, which provides that "[T]he expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit." The Act does not prohibit post-certification picketing. Douds v. Local 50, etc., 2 Cir., 224 F.2d 49.

It may be added that as of October 26, the final date of the hearing herein, the James premises had been picketed for some five months. The reluctance of workers and others to cross a picket line, of which the petitioner has made a point, has not been manifested by the employees of James, or those doing business with it. During that period, and in fact to the very date hereof, there has been no strike or slowdown at the James plant. Its suppliers have continued to make deliveries to it without incident, except as hereinafter referred to. There have been no threats or acts of violence or intimidation. It is my opinion, therefore, that peaceful picketing, including the carrying of the aforementioned signs, provided that it is not accompanied by acts and conduct hereinafter referred to, does not constitute an unfair labor practice.

■ The first of the D'Alba incidents, as well as the one involving Pennola,

having occurred prior to the certification of Local 710, were not violative of Section 8(b) (4) (C). However, the second D'Alba incident, while unaccompanied by violence or threats, went somewhat beyond the peaceful picketing permitted under Subsection (b), supra. The attempt by one of respondent's pickets to obstruct D'Alba's entrance into the James plant, resulting in his refusal to make a delivery, exceeded the bounds of peaceful picketing.

The second Postilio incident occurred after certification. The sole Edwards incident postdates not only certification but also the filing of the petition herein and the sessions of the hearing held on September 11 and 13. As in the case of the second D'Alba incident, the means employed by respondent's pickets in their approach to Postilio and Edwards exceeded that permitted by Subsection (c), supra.

■ The court has a reasonable range of discretion in granting temporary injunctive relief, appropriate to the particular conditions and circumstances involved. The measure of proof necessary to warrant the granting of such relief need not be as great as that required for a final decree. American Code Co. v. Bensinger, 2 Cir., 282 F. 829, 835.

The D'Alba, Postilio and Edwards incidents, though in some degree isolated occurrences, appear cumulatively to warrant the issuance of a temporary injunction. There appears to be reasonable cause to believe that the respondent, through its agents and representatives, has engaged in and, unless restrained, is likely to continue to engage in acts and conduct violative of Section 8(b) (4) (C) of the Act prior to the determination of the Board herein.

I find, therefore, that the petitioner is entitled to a temporary injunction restraining the respondent, its members, agents, employees or other representatives, pending the Board's final adjudication of the matter herein, from inducing or encouraging the employees of James or of any employer doing business with James to engage in a strike or a con-

certed refusal in the course of their employment to transport or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is to force or require James to recognize or bargain with the respondent as the representative of any of its employees as long as Local 710 is certified as the representative of such employees under Section 9 of the Act.

Nothing herein contained, however, shall be construed to prohibit peaceful picketing by representatives of the respondent, including the carrying of signs or banners containing statements such as those used after the certification of Local 710.

Submit proposed findings of fact and conclusions of law in conformity herewith.